2017R00680/AB

RECEIVED

DECEMBER 9, 2020

At: 8:30_____.m

WILLIAM T. WALSH

CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp, U.S.D.J. |
| | : | |
| v. | : | Criminal No. 20-1047 |
| | : | |
| JOSEPH SANTIAMO | : | 21 U.S.C. § 846 |

## I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

1.      Unless otherwise indicated, at all times relevant to this Information:

### The Defendant and His Medical Practice

a.      Defendant JOSEPH SANTIAMO ("SANTIAMO") was a resident of Staten Island, New York and was a licensed physician in the State of New York. SANTIAMO was also a registered practitioner with the United States Drug Enforcement Administration ("DEA"), which allowed him to dispense and issue prescriptions for certain controlled substances in the usual course of professional practice and for a legitimate medical purpose.

b.      SANTIAMO owned and operated a medical practice focused on internal medicine and geriatric care located in Staten Island, New York (the "Santiamo Office").

c.    Patient-1, Patient-2, Patient-3, Patient-4, Patient-5, Patient-6, and Patient-7 were each patients of SANTIAMO who received prescriptions from him for controlled substances (together, the "Santiamo Patients").

d.    Oxycodone is an opioid pain medication and controlled substance listed as a Schedule II drug under the federal Controlled Substances Act (the "CSA"), 21 U.S.C. § 801 *et seq.*, with a high potential for addiction and abuse and with severe restrictions on its accepted medical use.

## The Conspiracy

2.    From on or about January 1, 2012 through on or about May 3, 2018, in the District of New Jersey, and elsewhere, defendant

## JOSEPH SANTIAMO

did knowingly and intentionally conspire and agree with others to distribute and dispense a quantity of a mixture and substance containing oxycodone, a Schedule II controlled substance, outside the usual course of professional practice and not for a legitimate medical purpose, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## Goal of the Conspiracy

3.    The goal of the conspiracy was for SANTIAMO and others to profit from the distribution and dispensing of oxycodone by issuing prescriptions for oxycodone outside the usual course of professional medical practice and not for a legitimate medical purpose.

2

## Manner and Means of the Conspiracy

4.     The manner and means by which defendant SANTIAMO and others sought to accomplish the goal of the conspiracy included, among other things, the following:

a.     SANTIAMO wrote prescriptions for controlled substances for certain of his patients outside the usual course of professional practice and not for a legitimate medical purpose, including in amounts that far exceeded what was medically necessary and appropriate.   In total, SANTIAMO wrote unlawful oxycodone prescriptions for certain patients totaling approximately 3,572.98 grams (or 3.572 kilograms).

b.     For example, despite operating a practice ostensibly focused on geriatric care, SANTIAMO wrote the following prescriptions for the Santiamo Patients, all of whom were under the age of 65 at the time the prescriptions were written:

i. SANTIAMO wrote approximately 57 prescriptions for oxycodone for Patient-1, which included over 9,000 tablets and amounted to approximately 281,700mg of oxycodone.  Based on SANTIAMO's examination of Patient-1 and Patient-1's medical records, however, there was no medical necessity to treat Patient-1 with prescription opioids.

ii. SANTIAMO wrote approximately 59 prescriptions for oxycodone for Patient-2, which included over 14,000 tablets and amounted to approximately 424,800mg of oxycodone.  Based on SANTIAMO's examination of

3

Patient-2 and Patient-2's medical records, however, there was no medical necessity to treat Patient-2 with prescription opioids.

   iii. SANTIAMO wrote approximately 60 prescriptions for oxycodone for Patient-3, which included over 14,000 tablets and amounted to approximately 422,100mg of oxycodone. Based on SANTIAMO's examination of Patient-3 and Patient-3's medical records, however, there was no medical necessity to treat Patient-3 with prescription opioids.

   c. In addition, SANTIAMO solicited sexual favors from certain of the younger Santiamo Patients in exchange for unlawful oxycodone prescriptions, which were outside the usual course of professional practice and not for a legitimate medical purpose. In addition, each of these Santiamo Patients were under the age of 40 at the time SANTIAMO provided them with unlawful prescriptions and thus would not typically be treated by a geriatric physician such as Santiamo. For example:

   i. SANTIAMO wrote approximately 51 prescriptions for oxycodone for Patient-4, which included approximately 7,540 tablets and amounted to approximately 225,750mg of oxycodone.

   ii. Despite evidence that Patient-5 was abusing opioids, SANTIAMO wrote approximately 135 prescriptions for oxycodone for Patient-5, which included approximately over 11,000 tablets and amounted to approximately 316,930mg of oxycodone.

4

iii. SANTIAMO wrote approximately 18 prescriptions for oxycodone for Patient-6, which included approximately 3,060 tablets and amounted to approximately 194,400mg of oxycodone.

iv. SANTIAMO wrote approximately 48 prescriptions for oxycodone for Patient-7, which included approximately 6,480 tablets and amounted to approximately 194,400mg of oxycodone.

In violation of Title 21, United States Code, Section 846.

## FORFEITURE ALLEGATION

1.      Upon conviction of the offense of conspiracy to distribute controlled substances, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846, as alleged in this Information, SANTIAMO shall forfeit to the United States, pursuant to 21 U.S.C. § 853, all property, real or personal, obtained by SANTIAMO that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense.

## Substitute Assets Provision

2.      If any of the above-described forfeitable property, as a result of any act or omission of SANTIAMO:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third person;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).


CRAIG CARPENITO
United States Attorney

6

## CASE NUMBER: 20-1047 (MAS)

### United States District Court
### District of New Jersey

### UNITED STATES OF AMERICA

v.

### JOSEPH SANTIAMO

### INFORMATION FOR

### 21 U.S.C. § 846

**CRAIG CARPENITO**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

Adam Baker
*ASSISTANT U.S. ATTORNEY*
*973-645-2858*